WEINZWEIG, Judge:
¶1 At issue here is whether parties may remove a trial judge under Arizona Rule of Civil Procedure ("Rule") 42.1(e) if they secure a new evidentiary hearing from the appellate court in a special action and they have not previously exercised their right to a change of judge.
¶2 This is the second of two consecutive petitions for special action in this matter. In the first, *668 Coffee v. Ryan-Touhill ("Coffee I "), No. 1 CA-SA 18-0217, 2018 WL 5117110 (Ariz. App. Oct. 18, 2018), Joshua M. Coffee ("Father") moved for special action relief from the superior court's order that his minor son ("Son") immediately move from Arizona to Kansas and live with Jennifer Leigh Appling ("Mother"). A different panel of this court accepted jurisdiction and concluded the superior court had deprived Father of due process. This court ordered the superior court to conduct a second evidentiary hearing at which Father receives due process, and then revisit its decision to relocate the child based on a developed record. The superior court was also ordered to consider Mother's request for modified child support and Father's counter-petition to modify legal decision-making.
¶3 This second special action followed after Father unsuccessfully moved to change the trial judge before the second evidentiary hearing under Rule 42.1(e). The superior court determined that Rule 42.1(e) did not apply because Coffee I did not reverse the court's relocation decision or require it to conduct a new trial. We accept jurisdiction and grant relief because Father's right to change the trial judge was renewed under Rule 42.1(e) after Coffee I granted relief requiring a new evidentiary hearing and decision.[1]
FACTS AND PROCEDURAL BACKGROUND
¶4 Mother and Father divorced in 2008 with one minor child, Son. The superior court ordered joint legal decision-making authority over Son in the dissolution decree, but designated Father as the primary residential parent. Mother moved to Kansas in 2010 and the parties stipulated to a long-distance parenting plan. In July and August 2018, Mother filed a petition and emergency motion to modify parenting time and child support based on allegations that Son was engaging in dangerous behavior. Mother requested a "role reversal" in which Son would move from Arizona to Kansas and Mother would become the primary residential parent. Father responded and counter-petitioned.
¶5 The court treated Mother's emergency motion as one for temporary orders without notice under Arizona Rule of Family Law Procedure 48, and denied the motion after finding that Mother had not shown irreparable injury, loss or damage. The court set a limited evidentiary "return hearing" or "emergency hearing," at which it would hear testimony, but only from the parties and with no exhibits.
¶6 The actual hearing was more expansive than forecast. The trial judge considered and relied on medical notes from the child's therapist in Kansas. The notes had not been disclosed to Father before the hearing, yet the judge questioned him about their contents and relied on his answers in deciding that Son should be relocated to Kansas. At hearing's end, the judge expressed concern about Son's safety in Arizona and doubt about Father's parenting skills before announcing that "[Son] is going to Kansas" based on the court's "risk analysis."
¶7 The superior court entered what it described as a "temporary order," stating that "[b]ased on testimony presented," Son "shall reside with Mother in Kansas effective immediately pending further order of the Court." The court did not mention or include any specific findings on the relevant factors for parenting time under A.R.S. § 25-403(A) or child relocation under § 25-408(I). The court did not address Mother's request to modify child support or Father's counter-petition to modify legal decision-making. A telephonic follow-up hearing was scheduled.[2]
¶8 Five weeks later, Father petitioned this court for special action relief to vacate the superior court's ruling on due process grounds and sought an order for Son's immediate *669 return to Arizona. This court accepted jurisdiction, concluded that Father was denied due process, ruled that the order "cannot stand," determined that "a new hearing [was] required," and thus "direct[ed] the superior court to conduct an evidentiary hearing" within 60 days "that complies with applicable rules and statutes." Coffee I, 2018 WL 5117110, at *1-5, ¶¶ 1, 5, 8, 20, 22. The decision also directed the superior court to address the relevant statutory factors when it ruled on "the pending requests to modify legal decision-making, parenting time, and child support," id. at *5, ¶ 22, which meant revisiting the relocation question, see Berrier v. Rountree , 245 Ariz. 604, 606, ¶ 8, 433 P.3d 8, 10 (App. 2018) (parties "framed the issue as one of parenting time" even though court was "effectively faced with a relocation question"). The court did not reverse the superior court outright and order Son to remain in Arizona because the child had already moved to Kansas by the time Father pursued special action relief. Coffee I , 2018 WL 5117110, at *2, ¶ 8.
¶9 After securing relief in Coffee I , Father moved for a change of judge under Rule 42.1(e). The superior court denied the motion, stating the court of appeals had not ordered a "new trial" but only asked the superior court to explain why it entered the temporary relocation order. The superior court stressed that the court of appeals "did not reverse" its decision and "there is no evidence the trial court has any ill-feelings" against the parties based on the special action:
[T]here is nothing in the court of appeal's mandate that reverses this Court's decision or requires the trial court to try the pending issues anew. Instead, the appellate court requires this Court afford the parties an opportunity to have an "appropriate" evidentiary hearing and direct[s] this Court to make findings under A.R.S. § 25-403.
¶10 At the same time, the superior court did not schedule the rapid evidentiary hearing (within 60 days) required under Coffee I , but instead asked the parties for input on how to proceed and requested amended pleadings while promising "an evidentiary hearing [would be conducted] at an appropriate time determined by the court."
¶11 Father responded with a second petition for special action, asking this court to either reverse the superior court's denial of his motion to change judge, or to direct that the court comply with Coffee I and hold an evidentiary hearing within 60 days of October 25. We stayed all proceedings in the superior court on November 5, and then accepted jurisdiction and granted relief on November 26, issuing a brief order to grant a change of judge and conduct an evidentiary hearing. We advised a written decision would follow.
¶12 The superior court later raised concerns about its jurisdiction to hold the evidentiary hearing absent a mandate from the court of appeals that "revest[ed] jurisdiction with [the superior court]." In response, we reaffirmed our previous orders, addressed the superior court's jurisdictional concerns and lifted our November 5 stay. This decision explains our reasoning.
JURISDICTION
¶13 We accept jurisdiction of this special action because it presents a pure legal question and "the denial of a peremptory request for a change of judge is properly reviewed only by special action." Smith v. Mitchell , 214 Ariz. 78, 79, ¶ 2, 148 P.3d 1151, 1152 (App. 2006).
¶14 Before reaching that issue, however, we address the interplay between a special action in the court of appeals and the superior court's jurisdiction in the underlying matter. Unlike an appeal, jurisdiction never transfers from the superior court to the court of appeals in the special action context. Compare Ariz. R. Civ. App. P. 24(a) ("An appellate court retains jurisdiction of an appeal until it issues the mandate.") (emphasis added), with A.R.S. § 12-120.21(A)(1), (4) (conferring "[j]urisdiction [on court of appeals] to hear and determine petitions for special actions brought pursuant to the rules of procedure for special actions, without regard to its appellate jurisdiction"). A special action represents a separate, original proceeding where an appellate court examines the action or *670 inaction of public officials and may issue orders (similar to a common law writ) affecting future proceedings in a case. Ariz. R.P. Spec. Act. 1(a) (combining writs of certiorari, mandamus and prohibition into the "special action" proceeding); see also State ex rel. Hance v. Ariz. Bd. of Pardons & Paroles , 178 Ariz. 591, 594-95, 875 P.2d 824, 828-29 (App. 1993) ("[T]he legislature expanded our special action jurisdiction" under A.R.S. § 12-120.21(A)(4) to "cases to which our appellate jurisdiction does not extend.").
¶15 As a result, unless the appellate court issues a stay, the superior court may proceed in the underlying action during a special action. And even when a stay is entered, the superior court is only limited in its actions by the express language of the stay order. Although the superior court must comply with such orders, it does not lose jurisdiction as it would when an appeal is commenced.
¶16 In this special action, the superior court thus never lost jurisdiction of the underlying case, and any limitations set forth in the stay order were removed when that order was lifted.
DISCUSSION
¶17 Rule 42.1(e) authorizes a party to obtain a new trial judge "[i]n actions remanded from an appellate court" if "the appellate decision requires a new trial" and the movant has not previously removed a trial judge in the action. Ariz. R. Civ. P. 42.1(e). Father has not previously sought or received a change of trial judge. As such, the only question is whether Coffee I "remanded" this matter for a "new trial" under Rule 42.1(e)(1). We review the denial of a change of judge for an abuse of discretion, but interpret Rule 42.1(e) de novo . Anderson v. Contes , 212 Ariz. 122, 124, ¶ 5, 128 P.3d 239, 241 (App. 2006).
¶18 Rule 42.1(e) hinges on principles of fairness and impartiality. It is concerned about trial judges who might prejudge an issue on remand, having already tackled the issue, heard the arguments and reached a conclusion. Valenzuela v. Brown , 186 Ariz. 105, 109, 919 P.2d 1376, 1380 (App. 1996) ("Where, as here, the judge has made a decision on the merits of the case, he has shown unequivocally what he believes the proper outcome of the case to be ...."). It also guards against the "possibility of judicial bias" where trial judges might begrudge the parties who successfully seek review of their rulings. Id. at 108, 919 P.2d at 1379 (explaining "the reason for the rule-avoiding the possibility of judicial bias after reversal and remand-is as applicable as if there had been a trial"); Mitchell , 214 Ariz. at 80, ¶¶ 6-7, 148 P.3d at 1153.
¶19 We conclude that Coffee I renewed Father's right to change trial judges under Rule 42.1(e) because the decision directed the superior court to reexamine issues it already decided based on evidence it never heard. Valenzuela , 186 Ariz. at 109, 919 P.2d at 1380 ("The judgment now having been reversed, the policy reasons for permitting a change of judge as a matter of right on remand are all the more apparent."). We interpret the word "trial" in Rule 42.1(e) broadly enough to include a contested evidentiary proceeding.[3] Trial , Black's Law Dictionary (11th ed. 2019) ("A formal judicial examination of evidence and determination of legal claims in an adversary proceeding.").
¶20 To reiterate, the superior court conducted an evidentiary hearing and concluded, based on the testimony it heard, that Son must reside with Mother in Kansas. Coffee I determined the court's relocation order "cannot stand" because Father was deprived of due process in the first evidentiary hearing and thus ordered a new evidentiary hearing at which due process is afforded. The bottom line is that the superior court must revisit the same relocation issue based on the same factors and new evidence. A.R.S. §§ 25-403(A), -408(I) (parenting time and relocation of child); see Rountree , 245 Ariz. at 606, ¶ 9, 433 P.3d at 10 ("The court's power to enter relocation orders is rooted in (and limited by) A.R.S. § 25-408.").
*671 ¶21 Mother offers various arguments against the application of Rule 42.1(e) here. None are persuasive. Mother asserts the Coffee I decision did not require a "new trial," emphasizing the court of appeals never said "the evidence was insufficient to support the trial court's ruling." We disagree. This court ordered a new hearing in Coffee I because Father was denied procedural due process in the first hearing, including "the opportunity to be heard at a meaningful time and in a meaningful manner." Comeau v. Ariz. State Bd. of Dental Exam'rs , 196 Ariz. 102, 106-07, ¶ 20, 993 P.2d 1066, 1070-1071 (App. 1999). The superior court was ordered to allow Father to offer new and different evidence. See, e.g. , Cruz v. Garcia , 240 Ariz. 233, 235, ¶ 1, 377 P.3d 1028, 1030 (App. 2016) ("Because we agree Cruz was denied due process [when the court made its ruling on legal decision-making and parenting time], we vacate the order and remand the case for such a hearing.").
¶22 Nor are we persuaded that Rule 42.1(e) only applies if the words "reversal" or "new trial" appear in an appellate decision. Rule 42.1(e) does not require any magic words, but instead turns on what the superior court must do after the appeal or special action to resolve the error. Substance controls over form. See Valenzuela , 186 Ariz. at 108-09, 919 P.2d at 1379-80. If the superior court need only perform a ministerial act or function (e.g., recalculate interest) a change of judge is unavailable. But an order that the court revisit its prior decision based on new and different evidence renews the option to exercise an unused change of judge.
¶23 We likewise reject any argument that Rule 42.1(e) requires proof that trial judges are upset with the movants who successfully challenge their decisions on appeal or special action. Actual bias is not required. This prophylactic rule is premised on the mere potential for judicial bias, whether subconscious, intuitive or intentional. King v. Superior Court , 108 Ariz. 492, 493, 502 P.2d 529, 530 (1972) ("[I]t is always possible that the trial judge may subconsciously resent the lawyer or defendant who got the judgment reversed. The mere possibility of such a thought in the back of a trial judge's mind means that a new judge should be found.").
¶24 The superior court here relied on Anderson to deny Father's request for a new trial judge: "Just as in this case, no part of the Anderson decision by the trial court was vacated but rather the trial court was directed to explain why it entered certain orders." We affirmed the superior court's refusal to change the trial judge in Anderson after an earlier appellate court decision remanded the case for "a continuation of the proceedings already held rather than a de novo redetermination of the remanded issues." 212 Ariz. at 125, ¶ 9, 128 P.3d at 242.
¶25 Anderson is dissimilar and does not govern here. The superior court there was not ordered (as here) to conduct a brand new, full-blown evidentiary hearing. Anderson , 212 Ariz. at 126, ¶ 14, 128 P.3d at 243. The superior court there was not directed (as here) to revisit issues it had previously decided or to enter new and potentially different orders; it was instead ordered to conduct further proceedings on ancillary issues (calculated interest and attorneys' fees). Id. at 125-26, ¶¶ 9, 14, 128 P.3d at 242-43. And the superior court there was not ordered (as here) to "explain" its ultimate relocation decision on "pending" requests under a developed record; it was instead asked to explain its rationale behind then-existing, historical orders. Id. ; see Mitchell , 214 Ariz. at 81, ¶ 10, 148 P.3d at 1154 ("In essence, [ Anderson ] asked the trial court to explain why it had entered particular orders, not to enter new and potentially different ones."). Given the limited remand in Anderson , this court correctly observed that "the specter of judicial resentment [on remand was] virtually nonexistent." 212 Ariz. at 126, ¶ 15, n.4, 128 P.3d at 243, n.4.
¶26 We find Mitchell more instructive. As here, it involved a marriage dissolution. Wife petitioned for dissolution and then appealed the superior court's decree disposing of real property. Mitchell , 214 Ariz. at 79, ¶ 3, 148 P.3d at 1152. The court of appeals remanded "for redetermination of the ownership interests in the property." Id. Wife moved to change trial judges on remand, but the superior court denied the request. Id. at 79-80, ¶ 4, 148 P.3d at 1152-53. Wife petitioned for special action. Id. at 79, ¶ 1, 148 P.3d at 1152.
*672 The court of appeals reversed, holding that Wife should have received a new trial judge on remand because the superior court had to determine the remanded issue anew. Id. at 81, ¶ 12, 148 P.3d at 1154. The same is true here.
¶27 Last, we recognize that Rule 42.1(e) is couched in terms of a "remand," an unnecessary term in the special action lexicon because jurisdiction never transfers from the superior court to the court of appeals. A narrow reading of Rule 42.1(e) might thus imply that the right to change judges is never renewed after special action review. We reject that interpretation, and hold that an order granting relief and directing additional evidentiary proceedings to redo an earlier proceeding is the functional equivalent of a remand under Rule 42.1(e).
CONCLUSION
¶28 We reverse the superior court's denial of Father's notice of change of judge under Rule 42.1(e). If not already done, the superior court shall comply with our orders of November 26, 2018 and February 4, 2019, which require the court to assign a new trial judge to this matter and conduct a new evidentiary hearing.
¶29 Mother requests an award of attorneys' fees and costs under A.R.S. § 25-324. She offers no evidence of the parties' financial resources, however, and Father's positions throughout the proceedings were not unreasonable. We therefore deny her request.

Father moved under Rule 42.1(e) because Arizona Rule of Family Law Procedure 6 directed that Rule 42.1 applied to "[a]ll notices and requests for a change of judge." Since January 1, 2019, the family court rules clarify the right to change judges is renewed "if the appellate decision requires a new trial or contested hearing." Ariz. R. Fam. Law P. 6(f)(1).

Coffee I questioned whether a temporary order was proper because Mother had not requested one and her motion was identical to her petition for modification. 2018 WL 5117110, at *3-4, ¶¶ 14, 20.

In family court, there are many types of evidentiary hearings, which might or might not be labeled "trials" in practice. To that end, Arizona Rule of Family Law Procedure 6(f)(1), effective January 1, 2019, expressly refers to a "new trial or contested hearing."